

T (516) 280-3008
F (212) 656-1845
www.BellLG.com

June 21, 2019
**VIA ECF**

District Judge Sandra J. Feuerstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    **Re:**  **Graziosi v. Muniz**
       **Case No. 2:18-cv-05561(SJF)(AYS)**

Dear Judge Feuerstein:

  This firm represents Plaintiff Concetta Graziosi in the above-referenced matter. Plaintiff writes jointly with Defendant (collectively, the "Parties") to request that the Court approve the settlement agreement ("the Agreement") reached by the parties as "fair and reasonable." Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). A true and correct copy of the Agreement is attached as **Exhibit A**.

  Plaintiff has agreed to settle all of her claims in this action. Specifically, the Parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement and dismissal of these claims with prejudice, in exchange for consideration as set forth in the Agreement. The Agreement is the result of arms-length bargaining between the Parties with the help of a neutral, experienced mediator. The Agreement reflects a desire by the Parties to fully and finally settle and compromise all of Plaintiff's claims asserted in this case as outlined more specifically in the attached Agreement. The Parties have concluded that the Agreement is fair, reasonable, adequate, and in the Parties' mutual best interests.

  For these reasons and based on the reasons set forth below, the Parties jointly and respectfully request that that Court enter an Order approving the settlement as fair and reasonable.



T (516) 280-3008
F (212) 656-1845
www.BellLG.com

## I.    Statement of the Case

This is an action for money damages brought by Plaintiff Concetta Graziosi, who was employed by Defendant as a housekeeper. On October 4, 2018, Plaintiff filed a Complaint in this Court, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), violations of the New York Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL") and violations of the New York Domestic Worker's Bill of Rights ("DWBR"). Specifically, Plaintiff alleged that Defendant engaged in a variety of FLSA, NYLL and DWBR violations, including failure to pay appropriate overtime, failure to pay spread of hours pay pursuant to the spread of hours wage order of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, 146-1.6, and violation of the annual notice and wage statement requirements of the New York Labor Law (N.Y. Lab. Law. § 195).

Defendant contests and denies the allegations asserted by Plaintiff, denies that he is liable or owes damages to Plaintiff with respect to the alleged facts and has raised what Defendant avers are numerous meritorious defenses.

## II.    The Proposed Settlement is Fair and Reasonable

Under the settlement, Defendant will pay $380,000.00 to settle all claims. Of this amount, $126,666.66 (approximately 33.3%) will be for attorney's fees and costs in this matter, with the remainder to go to Plaintiff.

Under Lynn's Food, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Le v. Sita Information Networking Computing USA, Inc., No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)); see also Kopera v. Home Depot U.S.A., Inc., No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Having conferred through counsel and participated in a formal mediation of their dispute, it became clear to the Parties that there were sharply contested factual and legal disputes that went to the heart of Plaintiff's claims. Significantly, Defendant contested the Plaintiff's hours worked and methods of payment. Looked at as a whole, these contested issues suggested that settlement was a reasonable path forward for both Parties. Plaintiff's counsel believes the settlement figure is fair and reasonable in light of the litigation risks that Defendant brought to light in the course of the litigation and the settlement/mediation process and that it represents a reasonable amount of Plaintiff's actual overtime and liquidated damages for the period in which she could recover under the FLSA and NYLL.



T (516) 280-3008
F (212) 656-1845
www.BellLG.com

The delay and uncertainties involved in litigation, and potential appeals, further militate in favor of the settlement from Plaintiff's perspective. The proposed settlement represents a reasonable compromise between the strength of Plaintiff's claims, the defenses raised by Defendant and the uncertainties involved in attempting to obtain and collect on any potential judgment.

Considering the risks in this case outlined and discussed above, Plaintiff believes that this settlement is an excellent result for her, and it should be approved as a fair settlement. See Meigel v. Flowers of the World, NYC, Inc., 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

**III.    Plaintiff's Attorneys' Fees are Fair and Reasonable**

Under the settlement, and in accordance with their retainer agreement with Plaintiff, Plaintiff's counsel will receive $126,666.66 from the settlement amount as attorneys' fees and costs.  This represents approximately 33.3% of the settlement.

The amount provided to Plaintiff's counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. See Castaneda v. My Belly's Playlist LLC, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); see also Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's requested award is reasonable. *See* Alleyne v. Time Moving & Storage Inc., 264 F.R.D. at 60; see also McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010). Additionally, Plaintiff has already agreed to the fee provided for in the settlement.

Given Plaintiff's counsel's significant experience representing plaintiffs in New York state and federal courts in wage and hour litigation, Plaintiff's counsel was able to obtain a very good result in light of the circumstances with relatively modest time and expense.[1] Brief biographies of the attorneys who performed substantial work in this matter is as follows:

Darryn Solotoff is the managing partner with the firm of Bell Law Group, PLLC, and has been in practice since 2004. He has been a litigation attorney since he started practice. He represents plaintiffs and defendants in all phases of litigation, appearing in state and federal courts in New York and before administrative agencies such as the National

---

[1] Contemporaneous time records documenting counsel's time can be provided at the Court's request.



T (516) 280-3008
F (212) 656-1845
www.BellLG.com

Labor Relations Board and the Equal Employment Opportunity Commission. He routinely handles matters that arise under or in the context of discrimination and anti-harassment litigation, wage and hour laws, the Fair Labor Standards Act, the National Labor Relations Act, Title VII of the Civil Rights Act, the American with Disabilities Act and the Family and Medical Leave Act. Additionally, Mr. Solotoff conducts management training on a variety of labor and employment law topics. He frequently speaks on employment and disability law topics to lawyers, local chambers and human resource professionals. He was a contributing author to the treatise *Sex Discrimination and Sexual Harassment in the Workplace* by Solotoff and Kramer published by Law Journal Press. He is a former president of the Long Beach Lawyers Association, and an active member of the Nassau County Labor and Employment Law Association, Nassau Suffolk Trial Lawyers Association, and Long Beach Bar Association. Among his professional honors, he has been recognized as Professional of the Year, by the Long Beach Chamber of Commerce and Pro Bono Attorney of the year.

 Laura Reznick is a senior associate with the law firm of Bell Law Group, PLLC. She graduated *cum laude* from NYU School of Law in 2013 and is admitted to practice law in New York and California. Throughout Ms. Reznick's career, she has worked primarily on plaintiff-side employment litigation, with a focus on wage and hour issues. She has handled numerous individual and class action wage and hour disputes, the vast majority of which have resulted in settlement.

Should Your Honor have any questions or concerns regarding this settlement, the Parties will be pleased to address them. The Parties thank the Court for its considered attention to this matter.

Respectfully submitted,

BELL LAW GROUP, PLLC

_____/s/_____
Darryn Solotoff, Esq.
Attorneys for Plaintiff
100 Quentin Roosevelt Blvd.
Suite 208
Garden City, NY 11530
Tel: 516-280-3008
Fax: 516-706-4692
ds@belllg.com

4

UNITES STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------- x

CONCETTA GRAZIOSI,

                 Plaintiff,

         -against-

MARCO A. MUNIZ a/k/a MARC ANTHONY,

                 Defendant.

---------------------------------------- x

Case No. 2:18-cv-05561 (SJF)(AYS)

### SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and among Concetta Graziosi, on her own behalf and on behalf of any and all of her past, present and future representatives, heirs, administrators, executors, beneficiaries, agents, spouses, children, trustees, conservators, attorneys, and the successors and assigns of each such individual, (sometimes individually, and collectively, "Graziosi" or "Plaintiff") on the one hand, and Marco A. Muniz ("Muniz"), on his own behalf and on behalf of any and all of his past, present and future representatives, heirs, administrators, executors, beneficiaries, agents, spouses, children, trustees, conservators, attorneys and any entity that furnishes Muniz's services or that he owns or controls, in whole or in part, and the successors and assigns of each such individual and entity, (sometimes individually, and collectively, the "Muniz Parties") (Muniz and Plaintiff are sometimes referred to herein as a "Party" and collectively as the "Parties"), to memorialize the settlement of a civil proceeding styled *Concetta Graziosi v. Marco A. Muniz a/k/a Marc Anthony* pending in the United States District Court for the Eastern District of New York (the "Court"),

*Final*

Case No. 18-cv-05561 (SJF) (AYS) (the "Action"), and all claims that were or could have been asserted by Graziosi therein.

## 1. RECITALS AND BACKGROUND

**WHEREAS,** on October 4, 2018, Plaintiff commenced the Action through the filing of a Complaint against Muniz pursuant to the federal Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New York Domestic Worker's Bill of Rights ("DWBR") alleging causes of action for unpaid wages, overtime wages, paid days off and liquidated damages for the period of October 4, 2012 to September 30, 2017.

**WHEREAS**, Muniz contests and denies the allegations asserted by Plaintiff in the Action, denies that he is liable or owes damages to Plaintiff with respect to the alleged facts and causes of action asserted in the Action (or otherwise), and has raised what he avers are numerous meritorious defenses to Plaintiff's claims.

**WHEREAS**, on April 30, 2019, the Parties participated in private mediation, which was conducted by The Honorable Peter B. Skelos, a highly-regarded, experienced mediator.

**WHEREAS**, at the Mediation, after extensive negotiations, the Parties agreed to the monetary terms and the material non-monetary terms of a full and complete settlement of any and all claims that Graziosi asserted or could have asserted in the Action.

**WHEREAS**, based upon their analysis of a number of factors, including the risk of litigation and the possibility that litigation would not be resolved for several years, the Parties are satisfied and believe and aver that the terms and conditions of this Agreement are fair, reasonable and adequate.

**WHEREAS**, without acknowledging or conceding any liability or damages whatsoever, and without admitting that any pay (including unpaid wages or overtime pay) or paid days off

*Final*

were not properly provided to Plaintiff, Muniz has agreed to resolve the claims that Graziosi

asserted or could have asserted in the Action on the terms and conditions set forth in this

Agreement, to avoid the burden, expense, and uncertainty of litigation.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth

in this Agreement, as well as the other good and valuable consideration provided for herein, the

receipt and sufficiency of which the Parties hereby acknowledge, the Parties agree to a full and

complete settlement of the Action including, without limitation, any claims that Graziosi asserted

or could have asserted therein, on the following terms and conditions:

## 2.  RELEASE, CONSIDERATION AND OTHER TERMS

### 2.1  Release of Claims.

(a)    In consideration for the Settlement Payment (as defined in Section 2.2 below),

and other good and valuable consideration, the receipt and sufficiency of which are hereby

acknowledged, and with the sole exception of claims to enforce the terms of this Agreement,

Graziosi, on behalf of herself and on behalf of her respective current, former and future

representatives, heirs, administrators, executors, beneficiaries, agents, spouses, children, trustees,

conservators, attorneys, successors and assigns, (individually and collectively, the "Graziosi

Release Parties"), knowingly, voluntarily and irrevocably waives, releases, and fully discharges

Muniz and the other Muniz Parties, and each of them, from and of any and all claims, debts,

losses, demands, obligations, liabilities, causes of action, charges, grievances, complaints and

suits of any kind or nature, in law or in equity, whether known or unknown, suspected or

unsuspected, which the Graziosi Release Parties, or any of them, now have, may have had, or at

any time hereafter may have or claim to have against the Muniz Parties, or any of them, by

reason of any matter, cause or thing whatsoever, arising from the beginning of the world through

*Final*

the date on which the Court approves this Agreement, including, without limitation, any claims that relate to Graziosi's compensation or any wage and hour violations that may have occurred during, arising from, or relating to Graziosi's employment or engagement by Muniz (or any other Muniz Party) under federal, state and/or local law, including, but not limited to, any and all claims for unpaid wages, overtime compensation, improper deductions, travel time, bonuses, penalties, spread-of-hours pay, meal breaks, failure to maintain and furnish employees with proper wage notices and statements, other compensation, wages, or unpaid accrued leave, including but not limited to vacation, sick, or personal leave, pursuant to the Fair Labor Standards Act, New York Labor Law, New York Domestic Worker's Bill of Rights, New York Code of Rules and Regulations, New York Miscellaneous Industry Wage Order, and New York Wage Theft Prevention Act.  This release includes all claims for relief, damages and other amounts relating to any such released claims, including claims for liquidated damages, interest, punitive damages, penalties and attorneys' fees, costs and expenses.

(b)   In addition to and in furtherance of the waiver and release set forth in paragraph 2.1(a), above, in consideration for the Settlement Payment (as defined in Section 2.2 below), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Graziosi, knowingly and voluntarily, on her own behalf and on behalf of the other Graziosi Release Parties, irrevocably waives, releases and fully discharges Muniz and the other Muniz Parties, and each of them, from any and all claims, debts, losses, demands, obligations, liabilities, causes of action, charges, grievances, complaints and suits of any kind or nature that may be legally released and waived by private agreement, whether known or unknown, suspected or unsuspected, which the Graziosi Release Parties, or any of them, now have, may have had, or at any time hereafter may have or claim to have against the Muniz

4

*Final*

Parties, or any of them, by reason of any matter, cause or thing whatsoever, arising from the beginning of the world through the date on which the Court approves this Agreement, including, without limitation: (i) claims arising directly or indirectly from Plaintiff's employment or association with Muniz (or any other Muniz Party) and/or the termination of that employment or association; (ii) claims arising directly or indirectly from the actions or inaction of Muniz or any other Muniz Party; (iii) claims under federal, state, or local laws, statutes, constitutions, regulations, rules, ordinances, or orders, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Civil Rights Act of 1866, Sections 1981 through 1988 of Title 42 of the United States Code, the Age Discrimination in Employment Act, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Equal Pay Act, the Immigration Reform and Control Act, the Consolidated Omnibus Budget Reconciliation Act, the Fair Credit Reporting Act, the Occupational Safety and Health Act, the Family and Medical Leave Act of 1993, the New York State Human Rights Law, the New York State Civil Rights Law, and the New York City Human Rights Law, each as amended, and any other federal, state, or municipal law; and (iv) any other claims, whether for monies owed, reimbursement, attorneys' fees, litigation costs, damages, torts, emotional distress, pain and suffering, intentional infliction of emotional distress, negligence, promissory estoppel, breach of contract, breach of an implied covenant of good faith and fair dealing, constructive discharge, wrongful discharge, defamation, fraud, misrepresentation, or otherwise, arising prior to and through the date on which the Court approves this Agreement. This release includes all claims for relief, damages and other amounts relating to any such released claims, including claims for liquidated damages, interest, punitive damages, penalties and attorneys' fees, costs and expenses.

5

*Final*

**2.2  Settlement Payment.**

(a)  Subject to the Court's approval of this Agreement, the Parties shall resolve the

Action and any and all claims that the Graziosi Release Parties, or any of them, have, had or may

have against the Muniz Parties, or any of them, in consideration of the payment by Muniz (or

another appropriate Muniz Party) to Graziosi of the total sum of Three Hundred and Eighty

Thousand Dollars ($380,000.00) (the "Settlement Payment"), as set forth in subsections (i)

through and including (iv) below, in full release, accord and satisfaction of all claims that

Graziosi has, may have had, or hereafter may have or claim to have against the Muniz Parties,

and each of them, including but not limited to, claims for unpaid wages, overtime compensation,

improper deductions, travel time, bonuses, penalties, spread-of-hours pay, meal breaks, failure to

maintain and furnish employees with proper wage notices and statements, other compensation,

wages, or unpaid accrued leave, including but not limited to vacation, sick, or personal leave,

pursuant to the Fair Labor Standards Act, New York Labor Law, New York Code of Rules and

Regulations, New York Miscellaneous Industry Wage Order, New York Domestic Worker's Bill

of Rights, and the New York Wage Theft Prevention Act, from the beginning of the world

through the date on which the Court approves this Agreement.

(i)  Muniz, through his counsel, will remit to Graziosi's counsel a check made

payable to "Concetta Graziosi" in the gross amount of $126,666.67, less all applicable

deductions, taxes and withholdings, which will be reported on an IRS Form W-2 to Plaintiff.

This amount represents alleged back pay owed to Graziosi.

(ii)  Muniz, through his counsel, will remit to Graziosi's counsel a second

check made payable to "Concetta Graziosi" in the gross amount of $126,666.67, which will not

be subject to any deductions, taxes or withholdings, which will be reported on an IRS Form 1099

*Final*

to Plaintiff. This amount represents alleged liquidated damages, penalties and interest as referenced in the Complaint.

(iii)     Muniz, through his counsel, will remit to Graziosi's counsel a check made payable to "Bell Law Group, PLLC" in the gross amount of $126,666.66, which will be reported on Forms 1099 to Plaintiff and her counsel, Bell Law Group, PLLC. This amount represents Graziosi's attorneys' fees, costs and disbursements incurred in connection with the Action, including but not limited to, the negotiation and drafting of this Agreement.

(iv)     Graziosi and the Bell Law Group, PLLC shall each provide an executed IRS Form W-9, and Graziosi shall provide IRS Forms W-4 and I-9 (and required related documentation) and a New York State Form IT-2104, to Muniz's counsel simultaneously with Plaintiff's delivery of an executed Agreement to Muniz's counsel. The payments identified and described in subparagraphs (i) through and inclusive of (iii), above, shall be effectuated by Muniz no later than thirty (30) days from the date the Court approves this Agreement and terminates the Action or otherwise disposes of the Action on the Court's docket.

### 2.3  Responsibility for Taxes/Indemnification.

Plaintiff warrants and represents that she has not relied on any advice from the Muniz Parties or their attorneys or other representatives concerning any provisions of this Agreement or in respect of the tax consequences of the payments that will be made pursuant to this Agreement, and that she is relying on her own judgment and the advice of her own counsel in respect of the same. Plaintiff acknowledges that Muniz must and will report to the Internal Revenue Service (the "IRS") (as well as to state and local taxing authorities where applicable) all payments made pursuant to this Agreement, and that all such payments will be reported on IRS Forms W-2 and 1099 as set forth in this Agreement. Plaintiff expressly acknowledges, warrants and represents

7

*Final*

that (a) she is, and shall be, responsible for all federal, state and local tax liabilities that may result from the payments made pursuant to this Agreement; and (b) Muniz (and the other Muniz Parties) shall bear no responsibility for any such tax liabilities except solely for the employers' payroll tax contributions for wages, if any, for which Muniz may be liable. Plaintiff shall indemnify and hold the Muniz Parties harmless from and to the full extent of any such liabilities, payments and costs, including taxes, interest, penalties and attorneys' fees (except such liabilities, payments or costs relating solely to the employers' payroll tax contributions for wages, if any) which may be assessed against or incurred by the Muniz Parties, or any of them, in connection with any payment made to or on behalf of Plaintiff (including, without limitation, payments to her counsel) pursuant to this Agreement. Should any tax liability arise or accrue to Plaintiff under local, state or federal tax law as a result of any payments made pursuant to this Agreement, Plaintiff will pay any and all such obligations without seeking indemnity or reimbursement from Muniz or any other Muniz Party.

### 2.4  Receipt of Wages.

Graziosi affirms that, in respect of Muniz and the other Muniz Parties, she has reported all hours worked as of the date of this Agreement and has received all leave (paid and unpaid), compensation, wages, bonuses, commissions and/or benefits to which she is or may be entitled, and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions and/or benefits are due to her.

### 2.5  Waiver.

(a)  To the full extent permitted by law, Graziosi agrees that she will not bring or join any lawsuit or proceeding in any court or other forum against the Muniz Parties, or any of them, relating to her employment by Muniz (or any other Muniz Party), the terms and conditions of

8

*Final*

such employment, her compensation, the termination of her employment, or any claim or potential claim that Plaintiff has waived or released in this Agreement. Graziosi acknowledges that all such claims and causes of action brought in any such lawsuit or other proceeding are released and waived pursuant to this Agreement. Except as prohibited by law, in the event that any such claim is filed, it shall be dismissed with prejudice upon presentation of this Agreement to the Court or other tribunal and Graziosi shall reimburse Muniz (and/or the other Muniz Parties, as applicable) for all costs, including attorneys' fees and costs, that he or they incur in defending any such lawsuit or other proceeding.

(b)   Graziosi hereby acknowledges that she has waived and released any damages and other relief available (including, without limitation, money damages and equitable relief) in respect of the claims that she has waived and released in this Agreement. Graziosi shall not accept any award or compensation from any source or in connection with any proceeding (including, but not limited to, any proceeding brought by any other individual or by any government agency) with respect to any claim or right that she has waived and released in this Agreement. Notwithstanding the foregoing, Graziosi is not waiving any right that she may possess to file a charge with any administrative agency that is specifically provided by, and may not be waived under, law, but she acknowledges and agrees that she will not be entitled to, and shall not accept or retain, any payment or other benefit arising from any claim or charge against the Muniz Parties, or any of them, that is filed or initiated by Graziosi or on her behalf by any other individual or by any such agency or other governmental entity.

(c)   To the fullest extent permitted by law, Graziosi shall not provide information, advice or counsel to, or otherwise cooperate with or assist in any manner, any entity or individual, including, without limitation, any employee or former employee of the Muniz Parties,

*Final*

or any of them, asserting or seeking to assert any cause of action, charge or claim whatsoever against the Muniz Parties, or any of them, unless compelled to do so by force of law or subpoena. To the fullest extent permitted by law, Graziosi shall not, in connection with any action at law or proceeding in equity, or in any administrative proceeding, commenced by any individual or entity against the Muniz Parties, or any of them, participate as a witness or attempt to offer any evidence against the Muniz Parties, or any of them, concerning any act or omission of Muniz and/or any other Muniz Party, unless compelled to do so by force of law or subpoena.

**2.6  Exclusions from Release and Waiver.**

(a)     Notwithstanding the provisions set forth in paragraphs 2.1 and 2.5, above, nothing in this Agreement shall preclude Graziosi (or her attorney) from communicating directly with, making protected and required disclosures to, or responding to an inquiry from, any administrative or regulatory (including self-regulatory) agency or authority, including, but not limited to, the SEC, the Financial Industry Regulatory Authority ("FINRA"), the Commodity Futures Trading Commission ("CFTC"), the Consumer Financial Protection Bureau ("CFPB"), the U.S. Department of Justice ("DOJ"), the U.S. Congress, any agency Inspector General, the Equal Employment Opportunity Commission ("EEOC") and/or the NLRB, or making other disclosures that are protected under the whistleblower provisions of federal law or regulation.

(b)     To the extent any lawsuits, arbitrations, claims, charges, or complaints are filed against the Muniz Parties, or any of them, in any administrative, judicial, arbitral, or other forum, or with any international, federal, state, or local agency, by a third party or otherwise, Graziosi expressly waives and releases any claim to any form of monetary or other damages, or any other form of recovery or relief, in connection with any such proceeding, provided that nothing herein shall limit or restrict Graziosi's right to receive a payment pursuant to CFTC, SEC, IRS or other

10

*Final*

whistleblower incentive award programs administered by such agencies if applicable.  Further, if a lawful subpoena to testify before any court, tribunal or other body is issued to or served upon Graziosi, she will, in accordance with the provisions of paragraph 3, below, notify Muniz, through his counsel, and provide Muniz's counsel with a copy, of the subpoena.  Nothing in this Agreement shall prohibit Graziosi from providing truthful testimony or information to any government agency if required by law.

### 2.7  No Assignment.

Graziosi represents and warrants that she has not assigned or transferred (or purported to assign or transfer) to any individual or entity any claim that is waived or released in this Agreement, or any portion thereof or interest therein, including, but not limited to, any interest in the Action or any claims that were or could have been asserted therein.

### 2.8  No Admission of Liability.

By entering into this Agreement, the Muniz Parties do not admit and expressly deny any violation of law or any liability whatsoever to Graziosi, including, without limitation, as a result of or arising from the claims and allegations asserted in the Action.  Muniz has entered into this Agreement to avoid protracted litigation and to resolve and settle all disputes with and claims that were or could have been asserted against the Muniz Parties, or any of them, by Graziosi. The settlement of the Action, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement and/or the Parties' settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Muniz (or any other Muniz Party) or as an admission or evidence of the truth of any of the allegations asserted by Graziosi in the Action, the same being expressly denied; and (b) are not, shall not be deemed to be, and may not be used

*Final*

as an admission or evidence of fault or omission on the part of Muniz (or any other Muniz Party) in any civil, criminal, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and that it shall be inadmissible as evidence in any proceeding, except in an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

3.     **Non-Disclosure/Confidentiality.**

(a) The Parties recognize that this Agreement is not fully confidential as it will be filed with the Court and that, as a result, the contents thereof will be a matter of public record. Nevertheless, based on the unique nature of Graziosi's employment, following Graziosi's execution of this Agreement she will not solicit, advise or counsel present, former or future employees of the Muniz Parties, or of any of them, to bring any legal proceedings against the Muniz Parties, or any of them. Without limitation of the foregoing, with the sole exception of presenting this Agreement to the Court for approval, the Parties shall not disclose the existence or terms of this Agreement to any individual or entity including, without limitation, the press, any present, former or future employee of the Muniz Parties, or any of them, or any current, former or potential employer of Plaintiff, except: (i) to the Parties' respective attorneys, accountants and business and financial advisors, albeit only on the condition that any such individual is first apprised of this confidentiality provision and agrees to be bound thereby; (ii) to the extent required by applicable law or legal process; or (iii) in a legal proceeding to interpret, construe or enforce any of the terms and provisions of this Agreement, or seeking redress for any breach or alleged breach of the provisions of this Agreement, or otherwise arising hereunder, although the amount of the Settlement Payment shall not be disclosed in any such proceeding (and shall be redacted from any copy of this Agreement that is filed, presented at deposition, or

12

*Final*

otherwise used in said proceeding) unless a Party is asserting therein a claim or defense in respect of which the amount of the Settlement Payment is relevant.  In the event that Graziosi receives a subpoena or other lawful process, or is otherwise required by operation of law or an order of a court of competent jurisdiction, to disclose any information that is otherwise protected from disclosure pursuant to this paragraph 3(a), Graziosi shall, within three (3) business days of receiving such a request or directive for such disclosure, provide Muniz with written notice and a copy of such subpoena or other process so that Muniz will have the opportunity to object to or oppose such disclosure if Muniz so desires; provided, however, that if the date for disclosure set forth in such request or directive is less than ten (10) business days following the date on which such request or directive for such disclosure is first received, then Graziosi shall provide telephonic notice of the same to Muniz within one (1) business day of the date on which such request or directive is first received.

(b) While the Agreement will be a matter of public record as a result of its presentation to the Court, no Party will make any further disclosure of information exchanged or presented during the Parties' confidential mediation or in connection with the Parties' negotiation and drafting of the Agreement.

(c) Graziosi acknowledges and agrees that Muniz and the other Muniz Parties highly value their privacy, and, accordingly, Graziosi shall maintain privacy and confidentiality with respect to all information and other material of any kind concerning the Muniz Parties, including, without limitation, all information in any way relating to Muniz's personal life, (collectively, "Information"), except for information or material that is generally available to the public other than as a result of a disclosure by Graziosi in violation of paragraph 3 of this Agreement, or is required to be disclosed under operation of law, court order, subpoena or other lawful process.

13

*Final*

Graziosi shall hold and maintain in confidence all Information pertaining to the Muniz Parties and shall not disclose any such Information to any individuals or entities. To the extent that Graziosi is required by operation of law, court order, subpoena or other lawful process to disclose any Information, any such disclosure shall be subject to and governed by the final sentence of paragraph 3(a), above.

(d) Graziosi expressly acknowledges that the use or disclosure of information required to be maintained as confidential by her pursuant to paragraph 3(a), (b) and/or (c), above, will cause significant injury and irreparable harm to Muniz, and that the amount of damages caused thereby would be difficult to ascertain. Accordingly, Muniz shall have the right and ability to seek and to obtain immediate injunctive relief from any breach, or threatened breach, by Graziosi (or anyone acting on her behalf or at her direction) of paragraph 3(a), (b) and/or (c), above, in addition to any other rights or remedies that Muniz may have at law or in equity in such circumstances.

(e) In the event that, in evaluating the reasonableness of this Agreement, the Court determines that any provision set forth in this paragraph 3 is unacceptable, the Court may either (a) with the consent of the Parties, amend such provision so as to render it acceptable; or (b) if the Parties do not consent to such amendment of, or the Court is unwilling to so amend, such provision, sever so much of such provision as is necessary to render the remainder of paragraph 3 acceptable.

4.      **Non-Disparagement.**

The Parties will not at any time disparage or denigrate the other, or encourage or induce others to do so, or issue any communication, written or otherwise, that reflects adversely on or encourages any adverse action against the other (and, as to Muniz, the other Muniz Parties)

*Final*

except: (a) if testifying truthfully under oath pursuant to a lawful court order or subpoena, or (b) otherwise responding to or providing disclosures required by law.  The foregoing includes, without limitation, any statement to, or response to an inquiry by, any member of the press or media, whether written, verbal, electronic, or otherwise. In the event that a prospective employer makes inquiry of Muniz regarding Plaintiff, Muniz (or his representatives) will respond thereto solely by describing Plaintiff's position of employment by Muniz and the dates thereof.

5.     **ADEA Waiver.**

Without limitation of any other provision of this Agreement:

a.     Graziosi agrees and acknowledges that this Agreement constitutes a knowing and voluntary waiver and release of all rights or claims she has or may have against the Muniz Parties, and each of them, including, but not limited to, all rights or claims arising under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), including, but not limited to, all claims of age discrimination in employment and all claims of retaliation in violation of the ADEA; and she warrants and represents that she has no physical or mental impairment of any kind that has interfered with her ability to read and understand the meaning of this Agreement and its terms, and that she is not acting under the influence of any medication or mind-altering substance of any type in entering into this Agreement.

b.     Graziosi acknowledges her understanding that, by entering into this Agreement, she does not waive rights or claims that may arise from matters and events occurring after the date on which the Court approves this Agreement, including without limitation any rights or claims that she may have to enforce the terms and conditions of this Agreement.

c.     Graziosi agrees and acknowledges that the consideration provided to her under this Agreement is in addition to anything of value to which she is already or otherwise entitled.

15

*Final*

d.    Graziosi acknowledges that she was represented by counsel in the Action and in connection with this Agreement and that she had the full, unimpeded opportunity to consult with an attorney prior to executing this Agreement.

e.    Graziosi acknowledges that she was informed that she had at least twenty-one (21) days following her receipt of this Agreement in which to review and consider this Agreement and to consult with an attorney regarding the terms and effect of this Agreement. Any changes to this Agreement, material or otherwise, that are made following Graziosi's receipt of this Agreement shall not re-start the running of the original 21-day period.

f.    Nothing in this Agreement shall prevent Graziosi from (i) commencing an action or proceeding to enforce this Agreement, or (ii) exercising her right under the Older Workers Benefit Protection Act of 1990 to challenge the validity of her waiver of ADEA claims set forth in this paragraph 5.

**6.    Revocation.**

Graziosi may revoke this Agreement within seven (7) days from the date she executes this Agreement, in which event this Agreement shall be null and void *ab initio* and of no force or effect as to any Party. Any revocation must be in writing and received by Muniz's counsel before the end of the seventh day after this Agreement is executed by Graziosi.

**7.    INTERPRETATION AND ENFORCEMENT.**

**7.1  Cooperation Between the Parties; Further Acts.**

The Parties shall cooperate with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms.  Upon the request of the other Party, each Party shall perform such further acts and execute and deliver such other documents as are reasonably necessary to carry out the provisions and intent of this Agreement.

16

*Final*

**7.2    No Other Representations.**

Each Party acknowledges that, except as expressly set forth in this Agreement, no representations of any kind or character have been made by any Party or by such Party's agents, representatives, or attorneys, to induce the other Party's execution of this Agreement.

**7.3    Entire Agreement.**

This Agreement is an integrated contract that constitutes and contains the entire agreement and understanding between the Parties with regard to the subject matter contained herein and supersedes and replaces all prior negotiations and agreements, proposed or otherwise, written or oral, between the Parties.  All prior and contemporaneous negotiations and understandings between the Parties shall be deemed and are merged into this Agreement.

**7.4    Binding Effect.**

This Agreement shall be binding upon the Parties and their respective spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, successors and assigns.

**7.5    Arm's Length Transaction; Materiality of Terms.**

The Parties have negotiated all of the terms and conditions of this Agreement at arm's length.  All of the terms and conditions of this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

**7.6    Captions.**

The captions and headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

*Final*

**7.7    Construction.**

The determination of the terms and conditions of this Agreement was by mutual agreement of the Parties.  Each Party participated jointly in the drafting of this Agreement and, therefore, the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**7.8    Severability.**

If any provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable (other than Sections 2.1 and/or 2.2), the remaining provisions of this Agreement shall continue in full force and effect according to their terms.  In the event that Graziosi commences a proceeding or otherwise attempts to seek recovery for any claim that is subject to the waiver and release set forth in paragraph 2.1, above, and a court of competent jurisdiction determines that Section 2.1, or any portion thereof, is unenforceable, then: (i) Muniz's financial obligations with respect to Graziosi under Section 2.2 shall be null and void; and (ii) Graziosi shall return the entirety of the Settlement Payment to Muniz.

**7.9    Governing Law.**

The rights and obligations of the Parties set forth in this Agreement shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York, without regard to that State's conflict of laws principles.

**7.10    Continuing Jurisdiction.**

The Court shall retain jurisdiction over the interpretation, implementation and enforcement of this Agreement as well as any and all matters arising out of, or related to, the interpretation, implementation or enforcement of this Agreement and of the settlement contemplated thereby.  If the Court should refuse or decline to retain jurisdiction over such

*Final*

matters for any reason, this Agreement may be enforced in any federal or state court of competent jurisdiction located in the State of New York, County of New York. The Court's refusal to retain jurisdiction over the matters described in this paragraph 7.10 shall not void or otherwise effect this Agreement.

### 7.11    Waivers, Modifications, and Amendments.

No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in a writing signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement. Notwithstanding any such failure, such Party shall have the right thereafter to insist upon the performance of any and all of the provisions of this Agreement.

### 7.12    Prevailing Party Fees.

In the event that there is any litigation or other proceeding to enforce this Agreement, or for the breach or alleged breach thereof, and one Party is found to have breached any term(s) of this Agreement, the non-breaching Party shall be entitled to receive from the breaching Party its reasonable attorneys' fees, expenses, and costs incurred in connection with such litigation or other proceeding, through and including the exhaustion of all rights of appeal.

### 7.13    Effective Date; Counterparts.

This Agreement shall become effective upon its execution and delivery by all Parties and its final approval by the Court. The Parties may execute this Agreement in counterparts, which,

*Final*

when taken together, shall constitute a complete Agreement, which shall have the same validity, force, and effect as if all Parties had signed the same instrument.

### 7.14    Facsimile and Email Signatures.

Any Party may execute this Agreement and cause its counsel to transmit such executed Agreement via facsimile or .pdf to counsel for the other Party. Any signed Agreement transmitted by facsimile or .pdf shall be deemed to reflect an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmitted the Agreement by facsimile or .pdf as if it bore an original signature.

### 8.    ACKNOWLEDGEMENTS

### 8.1    General Acknowledgements.

The Settlement Payment and the other good and valuable consideration provided for in this Agreement are not a mere recital but are the consideration for this Agreement and all terms herein, including the full and final waiver and release of claims effected thereby. The Parties represent and warrant that the Settlement Payment is fair and reasonable and that they are entering into this Agreement of their own free will and accord after consultation with their attorneys. The Parties acknowledge that they have jointly prepared this Agreement and that they are executing this Agreement knowingly and voluntarily.

### 9.    Notice.

**9.1**    All notices or other communications that are required, contemplated, permitted or made under this Settlement Agreement (with the exception of the telephonic notice contemplated by the last sentence of paragraph 3(a), above), shall be in writing and all such notices and communications shall be delivered by email and overnight delivery (by a recognized carrier that

*Final*

maintains written confirmation of delivery), addressed as follows, and shall be deemed to have

been received one (1) business day after the transmittal thereof in accordance with the foregoing:

<u>If to the Muniz Parties:</u>

Ms. Yolanda SantaMaria
92 72nd Street
Brooklyn, New York 11209
E-Mail: ysantamari@aol.com
Telephone: (917) 921-2845

<u>With copies to:</u>

John J. Rosenberg, Esq.
Rosenberg & Giger P.C.
1330 Avenue of the Americas
Suite 1800
New York, New York 10019
E-Mail: jrosenberg@rglawpc.com
Telephone: (646) 494-5000

<u>If to Graziosi:</u>

Ms. Concetta Graziosi
25 Marcus Avenue
Glen Cove, New York 11542
E-Mail: c/o DS@BellLG.com
Telephone: (516) 801-2121

<u>With a copy to:</u>

Darryn Solotoff
Bell Law Group
100 Quentin Roosevelt Blvd., Suite 208,
Garden City, New York 11530-4843
E-Mail: DS@BellLG.com
Telephone: (516) 280-3008

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the

day and year first written above, intending to be legally bound thereby.

Witness:_____

                                     **CONCETTA GRAZIOSI**

Witness:_____

                                     **MARCO A. MUNIZ**

*Final*

maintains written confirmation of delivery), addressed as follows, and shall be deemed to have been received one (1) business day after the transmittal thereof in accordance with the foregoing:

| | |
|---|---|
| If to the Muniz Parties: | Ms. Yolanda SantaMaria<br>92 72nd Street<br>Brooklyn, New York 11209<br>E-Mail: ysantamari@aol.com<br>Telephone:  (917) 921-2845 |
| With copies to: | John J. Rosenberg, Esq.<br>Rosenberg & Giger P.C.<br>1330 Avenue of the Americas<br>Suite 1800<br>New York, New York  10019<br>E-Mail: jrosenberg@rglawpc.com<br>Telephone:  (646) 494-5000 |
| If to Graziosi: | Ms. Concetta Graziosi<br>25 Marcus Avenue<br>Glen Cove, New York 11542<br>E-Mail: c/o DS@BellLG.com<br>Telephone:  (516) 801-2121 |
| With a copy to: | Darryn Solotoff<br>Bell Law Group<br>100 Quentin Roosevelt Blvd., Suite 208,<br>Garden City, New York 11530-4843<br>E-Mail: DS@BellLG.com<br>Telephone:  (516) 280-3008 |

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the day and year first written above, intending to be legally bound thereby.

Witness: _____          _____
                                         **CONCETTA GRAZIOSI**

Witness: _____          _____
                                         MARCO A. MUNIZ

*Final*